Michael J. Kapaun, WSBA No. 36864
Matthew A. Mensik, WSBA No. 44260
Casey M. Bruner, WSBA No. 50168
WITHERSPOON · KELLEY
422 W. Riverside Avenue, Suite 1100
Spokane, WA  99201-0300
Phone:  (509) 624-5265
Fax:   (509) 458-2728
mjk@witherspoonkelley.com
mam@witherspoonkelley.com
cmb@witherspoonkelley.com
*Attorneys for Kent J. Preston*

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENT J. PRESTON, an individual,<br><br>　　　　　　　　Plaintiff,<br>　　vs.<br><br>WIRELESS COMMUNICATIONS, INC., d/b/a Cellular Plus, a Montana Corporation; DUSTIN MILICAN, an individual; AARON MARTINSON, an individual; MATT SCHWARTZ, an individual; and DAVID CHANDLER, an individual,<br><br>　　　　　　　　Defendants. | NO.  3:19-cv-5117<br><br>PLAINTIFF'S COMPLAINT<br><br>**JURY DEMAND**<br><br><br><br>**EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(h)(1)** |

Plaintiff KENT J. PRESTON, by and through his attorneys of record, Michael J. Kapaun, Matthew A. Mensik, and Casey M. Bruner of Witherspoon Kelley, P.S., hereby alleges and complains as follows:

### I.    PARTIES, VENUE, JURISDICTION

1.1    Plaintiff KENT J. PRESTON ("Mr. Preston") is a citizen of the United States, a resident of the state of Washington, and an Army Specialist in the Oregon Army National Guard.

PLAINTIFF'S COMPLAINT - 1

1.2     Defendant WIRELESS COMMUNICATIONS, INC. is a Montana Corporation (Business Identifier: D094397) doing business as "Cellular Plus" (Business Identifier: A066433) (hereinafter, "Cellular Plus").  Cellular Plus is an authorized retailer for Verizon Wireless with more than 60 stores in the Pacific Northwest, including 11 in Washington State.

1.3     Defendant DUSTIN MILICAN ("Mr. Milican") is a citizen of the United States, a resident of the state of Washington, and a Store Manager for the Cellular Plus store located in Kelso, Washington (the "Store").

1.4     Defendant AARON MARTINSON ("Mr. Martinson") is a citizen of the United States, a resident of the state of Washington, and a Regional Manager for Cellular Plus.

1.5     Defendant MATT SCHWARTZ ("Mr. Schwartz") is a citizen of the United States, a resident of the State of Wyoming, and a Regional Trainer for Cellular Plus.

1.6     Defendant DAVID CHANDLER ("Mr. Chandler") is a citizen of the United States, a resident of the State of Montana, and the Corporate Human Resources Director for Cellular Plus.

1.7     Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the conflict arises out of the law of the United States.

1.8     Personal jurisdiction over the Defendants is appropriate pursuant to Federal Rule of Civil Procedure 4 and RCW 26.50.240, as Defendant Cellular Plus owns and operates businesses in the state of Washington.

1.9     Venue is proper pursuant to 28 U.S.C. § 1391, *et. seq*.

///

///

///

PLAINTIFF'S COMPLAINT - 2

## II.    STATEMENT OF FACTS

*A.    Summary of USERRA Violations*

2.1    At all times relevant, Mr. Preston was an employee of Cellular Plus working at the Store.

2.2    At all times relevant, Mr. Preston was (and still is) a military service member in the Oregon Army National Guard.

2.3    From the outset of his employment with Cellular Plus, Mr. Preston experienced adverse treatment based solely upon his military service.

2.4    After being made aware of these violations, Cellular Plus nevertheless persisted in its unlawful conduct.

2.5    Ultimately, and immediately after returning from military orders, Mr. Preston's employment was illegally terminated by Cellular Plus under the pretext that he had worn the wrong kind of shirt to work on his first day back and/or failed to show up for work shifts that his store manager, Mr. Milican, never informed him of.

*B.    July 2018 – Mr. Preston Begins Employment with Cellular Plus*

2.6    In July 2018, Mr. Preston applied and interviewed for a position with Cellular Plus as a "Store Manager In Training" at the Store. After his references were contacted, Mr. Preston was offered a position, but had to slightly delay his start date due to military service obligations. When Mr. Preston arrived for his first day of work, he was informed that the Store Manager In Training position was given to somebody else and that the only position available for him was "Wireless Consultant, Inside Sales" - a position for which he had not applied.

2.7    Mr. Preston suspected that he had been denied the management position due to his military service.

PLAINTIFF'S COMPLAINT - 3



Witherspoon·Kelley
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300    Fax: 509.**458.2728**

2.8     Despite his suspicions, Mr. Preston accepted the sales position, because it was full-time employment with benefits and the opportunity to support his family with additional income through commissions and bonuses.

2.9     From the outset of his employment, Mr. Preston was praised by his supervisors for his responsibility and maturity. He never received so much as a verbal counseling regarding his attendance, personal appearance, or job performance.  That all changed after Mr. Preston was placed on military orders in August 2018, which made him unavailable to work for Cellular Plus on certain days.

### C.     *August 2018 – Mr. Preston is Called to Military Duty and Cellular Plus Begins to Discriminate Against Him.*

2.10    On or about August 23, 2018, Mr. Preston was called into a meeting with Mr. Milican, his Store Manager and immediate supervisor at the Store.

2.11    Mr. Milican informed Mr. Preston that he was going to be demoted to part-time employment. Mr. Preston asked for, and received, Mr. Milican's permission to record their conversation with his cell phone.

2.12    During the August 23, 2018 meeting, Mr. Milican expressly stated that Regional Manager, Mr. Martinson and Regional Trainer, Mr. Schwartz, were concerned about his recent military service and worried that Mr. Preston's National Guard duty was going to be a "very consistent thing."

2.13    Mr. Milican further confirmed that Messrs. Martinson and Schwartz had decided "at a bare minimum" to demote Mr. Preston to part-time employment, which would entail a reduction in work hours, a reduction in his hourly wage rate, and a loss of full-time benefits.

2.14    Mr. Milican admitted that Cellular Plus's adverse employment action was due solely to Mr. Preston's military service and had nothing to do with his job performance.  He

PLAINTIFF'S COMPLAINT - 4

WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300          Fax: 509.**458.2728**

further conveyed a message from Messrs. Martinson and Schwartz that, if Mr. Preston's unavailability due to military service "keeps happening" and was going to be a "recurring thing", then this "might not be the right job" for Mr. Preston.

2.15    Mr. Preston attempted to clarify whether his management was saying that they didn't want to continue his employment if he continued serving in the National Guard. Mr. Milican confirmed that understanding, adding that "they just don't know how to make it work."

2.16    Mr. Preston's conversation with his Store Manager left him feeling shocked and in a state of disbelief that Cellular Plus would intentionally discriminate against him for serving in the military.

2.17    Mr. Preston's shock was justifiable given that Cellular Plus advertises itself on the internet as a "proud military Friendly Employer."

2.18    In order to confirm the basis for this adverse employment decision - which he did not want to believe was true - Mr. Preston prepared a brief letter summarizing Mr. Milican's statements during their meeting.

2.19    Mr. Milican signed the letter, which stated:

> Subject: Kent Preston Employment Status
>
> Mr. Preston's demotion/cut in hours only has to do with his National Guard service, the operation tempo is currently high.
>
> It has NOTHING to do with his performance or behavior at work which has been at or above standards.
>
> Dustin Milican
>
> Store Manager, Cellular Plus

PLAINTIFF'S COMPLAINT - 5

**D.     *August 24, 2018 - Cellular Plus's Regional Management Confirms the Basis for the Company's Discriminatory Actions.***

2.20     Mr. Preston was surprised that his Store Manager was willing to acknowledge, in writing, that Cellular Plus was discriminating against him based solely on his military service - a clear USERRA violation.

2.21     Out of an abundance of fairness to his civilian employer, and in order to confirm that Mr. Milican's statements accurately reflected Cellular Plus's official decision (and the reasons for it), Mr. Preston requested a subsequent meeting with his Regional Manager, Mr. Martinson, which took place on or about August 24, 2018.

2.22     Mr. Martinson also gave Mr. Preston permission to record their conversation with his cell phone.

2.23     To Mr. Preston's surprise, Mr. Martinson confirmed the substance of what Mr. Milican had stated - e.g., that Mr. Preston was being moved from full-time to part-time due solely to his National Guard service.

2.24     Mr. Martinson then stated that Mr. Preston would be "unemployed" with Cellular Plus when he goes on an expected overseas military deployment in 2019, because he had not been with the company long enough to take full leave.

2.25     Mr. Martinson further stated that, if Mr. Preston did not voluntarily agree to step down before his anticipated deployment, Cellular Plus would possibly have to terminate his employment.

2.26     Mr. Preston was then told that this was strictly a business decision by Cellular Plus and had nothing to do with his work performance, because Mr. Preston was not "underperforming" and is a "responsible, mature person."  Finally, Mr. Martinson informed Mr.

PLAINTIFF'S COMPLAINT - 6



422 W. Riverside Avenue, Suite 1100     Phone: 509.**624.5265**
Spokane, Washington 99201-0300            Fax: 509.**458.2728**

Preston that, after leaving voluntarily or being terminated, he would have to re-apply for a job when his military enlistment concluded.

### E. Cellular Plus's Corporate Human Resources Director Becomes Involved.

2.27   After confirming that his military service was the sole motivating factor behind Cellular Plus's adverse employment action against him, Mr. Preston decided to share the August 24, 2018 letter signed by Mr. Milican with his National Guard unit and military counsel to see if they could offer any help or advice.

2.28   Unbeknownst to Mr. Preston and without his permission, it appears that someone from his unit posted the letter to Facebook.

2.29   Word of the letter being posted on social media got back to Cellular Plus and Mr. Preston was called to meet with Regional Trainer Mr. Schwartz and Mr. Chandler (the corporate Human Resources Director) on or about August 27, 2018. Mr. Schwartz attended the meeting in person. Mr. Chandler attended the meeting by phone.

2.30   Mr. Schwartz gave Mr. Preston permission to record the conversation with his cell phone.

2.31   Mr. Chandler began the August 27, 2018 meeting by questioning Mr. Preston about the posting of Mr. Milican's letter on social media and indicating that somebody from Pennsylvania had contacted Cellular Plus through Facebook Messenger.

2.32   Mr. Chandler claimed that Cellular Plus had always done a good job of accommodating other National Guard members.

2.33   Mr. Preston explained that he did not post the letter on social media, but was concerned that a demotion to part-time would result in a loss of benefits, promotions and pay.

PLAINTIFF'S COMPLAINT - 7



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300         Fax: 509.**458.2728**

2.34    He also explained how Cellular Plus managers had told him that, if he was going to stay in the National Guard, maybe this was not the career for him.  As Mr. Chandler interrogated Mr. Preston on whether he had drafted the letter signed by Mr. Milican, Mr. Preston began to feel that the purpose of the meeting was disciplinary in nature and elected to take a break to speak with military attorneys.

2.35    Prior to the break, Mr. Schwartz made a point to state that Mr. Preston had not told Cellular Plus that he would need any time off for military obligations during his employment interview.  Mr. Schwartz's comment suggested that Cellular Plus would not have hired Mr. Preston if it had known of his military service obligations.

2.36    After consulting with military counsel, Mr. Preston's meeting with Messrs. Chandler and Schwartz continued.  After Mr. Preston stated that he had written the letter to create a record of the reason for his demotion, Mr. Chandler confirmed that he had directed Messrs. Schwartz and Martinson to ask whether Mr. Preston would consider moving to a part-time position due to the limitations his military service had placed on his work hours.

2.37    As the conversation progressed, Mr. Preston reiterated that he had concerns about being paid less per hour as a part-time employee and losing the benefits of a full-time employee, including vacation accrual, retirement contributions, and health care.

2.38    Mr. Preston specifically expressed his concern that his military service was affecting him negatively with Cellular Plus and that he felt his reemployment status would be "up in the air" due to his service.

2.39    Mr. Chandler, who demonstrated knowledge of USERRA rights during the meeting, then attempted to backtrack on some of the previous statements made to Mr. Preston by supervisors and senior management before deciding to end the conversation.

WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300          Fax: 509.458.2728

2.40    Having determined that Cellular Plus's Human Resources Director was aware of USERRA and its requirements, Mr. Preston looked around the Store to see if Cellular Plus had posted the "Your Rights Under USERRA" poster mandated by 38 U.S.C. § 4334.  After a diligent search, Mr. Preston confirmed that Cellular Plus failed to post such a notice and never provided him with notice of the rights, benefits and obligations under USERRA.

### F.    Cellular Plus Retaliates Against Mr. Preston for Asserting His Rights.

2.41    On or about August 28, 2018, Mr. Chandler visited the Store and requested a meeting with Mr. Preston.

2.42    During that meeting, Mr. Chandler informed Mr. Preston that he could stay in full-time status, but Cellular Plus would not promote Mr. Preston to Manager In Training until he was completely out of the National Guard.

2.43    Immediately thereafter, Mr. Preston began to notice a significant negative shift in the manner in which he was treated at work and the duties he was assigned to perform.

2.44    Although he had previously been praised for his performance, responsibility, and maturity, Mr. Preston now received approximately half a dozen verbal counselings in one day from his superiors at Cellular Plus concerning the most trivial matters.

2.45    He was also informed by his Store Manager, Mr. Milican, that the Regional Manager, Mr. Martinson, had directed that Mr. Preston only be assigned "busy work" to include cleaning and filing paperwork, and that Mr. Preston was not permitted to participate in any sales or sales training.

2.46    This adverse treatment was clearly done in retaliation for Mr. Preston's assertion of his rights under USERRA and directly impacted his ability to start earning sales commissions.  Mr. Preston felt as though this treatment was designed to make him quit, so that

PLAINTIFF'S COMPLAINT - 9

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100     Phone: 509.**624.5265**
Spokane, Washington 99201-0300          Fax: 509.**458.2728**

Cellular Plus would no longer have to deal with any of the challenges involved in scheduling for a military member.

### G. Cellular Plus Refuses to Reinstate Mr. Preston.

2.47 On or about September 13, 2018, Mr. Preston visited the Cellular Plus store and informed his Store Manager that he would be off orders between September 30, 2018 until October 8, 2018 and was requesting reinstatement in his position for that period of time.

2.48 Mr. Preston's request for reinstatement was denied as Mr. Milican told him to "not bother coming back" until he was completely off military orders in December 2018.

2.49 Mr. Preston again requested reinstatement via email on September 27, 2018 and twice left voice messages with the same request. All of his attempts to be timely reinstated after coming off the September set of orders were either denied or ignored by Cellular Plus.

### H. Cellular Plus Unlawfully Terminates Mr. Preston.

2.50 Mr. Preston next went on military orders to BT Collins Army Reserve Center in Sacramento, California from October 8, 2018 through December 10, 2018 (63 days).

2.51 After completing this set of orders, Mr. Preston timely requested reinstatement to his full-time sales position in an email to Messrs. Chandler and Milican dated December 20, 2018.

2.52 Mr. Chandler replied, stating that Mr. Preston's first day back would be December 22, 2018 and that his Store Manager, Mr. Milican, would update his schedule for the rest of the month and provide it to him.

2.53 Mr. Chandler further promised to send Mr. Preston a "New Hire" binder, due to the fact that there had allegedly been a number of changes at Cellular Plus since he went on military orders. Mr. Preston never received the promised binder.

PLAINTIFF'S COMPLAINT - 10



WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

2.54    Mr. Preston arrived for work approximately fifteen minutes early on December 22, 2018, wearing a shirt that he had worn to work at the Store, without issue, several times prior to the commencement of his military duty.

2.55    Before his shift began, however, Mr. Milican immediately confronted Mr. Preston and told him to go home for wearing a shirt that was allegedly out of compliance with Cellular Plus dress requirements.

2.56    Since Mr. Preston did not have a complete schedule for December 2018 yet, he asked Mr. Milican when he could come back to work. His manager replied that he would be in touch to let him know when his next shift would be.

2.57    Mr. Milican never contacted Mr. Preston to let him know when his next shift would be.

2.58    After contacting Cellular Plus to find out when he could return to work, Mr. Preston was informed by Mr. Chandler on December 31, 2018 that Cellular Plus had terminated his employment because he had not shown up for his last two shifts.

2.59    Mr. Preston responded that Mr. Milican had never provided him with a work schedule for the remainder of December, because he had been immediately sent home on December 22 (before his shift began). Nevertheless, Mr. Chandler stated that he would only believe Mr. Milican's account and that Mr. Preston's employment with Cellular Plus was terminated.

### III.    FIRST CAUSE OF ACTION
### (Violation of 38 U.S.C. § 4311(c)(1) - Discrimination)

3.1    Pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311(c)(1), an employee's military obligation cannot serve as a motivating factor for an employer's decision that is adverse to that employee.

PLAINTIFF'S COMPLAINT - 11

3.2     Mr. Preston's requirement that he perform Army National Guard service and/or training is a military obligation.

3.3     Mr. Preston's military service was a motivating factor in Cellular Plus's decision to take numerous adverse employment actions against him, including, but not limited to:

(a)     Denying Mr. Preston a position as Manager In Training due solely to his military service obligations in July 2018;

(b)     Demoting and/or threatening to demote Mr. Preston based solely on his military service obligations in August 2018, with a corresponding loss in pay and benefits;

(c)     Threatening to terminate Mr. Preston's employment if he did not voluntarily resign his position prior to an anticipated deployment in 2019;

(d)     Prohibiting Mr. Preston from being eligible for a promotion to Manager In Training until his term of enlistment expired and he was completely out of the military service; and/or

(e)     Terminating Mr. Preston's employment in December 2018, immediately after coming off military orders.

3.4     As a result of Cellular Plus's clear and wilful discriminatory conduct, Mr. Preston suffered economic and non-economic damages in an amount to be proven at trial.

### IV.     SECOND CAUSE OF ACTION
(Failure to Reemploy - 38 U.S.C. § 4312)

4.1     Pursuant to USERRA, 38 U.S.C. § 4312, an employee who comes off military orders is entitled to be reemployed by their civilian employer if the employee: (a) is a member of the Armed Forces of the United States; (b) gives notice to the employer of his military obligations; (c) serves honorably during the military service period; (d) gives timely notification

PLAINTIFF'S COMPLAINT - 12

to the employer of his intent to return to work; and (e) serves less than five years with the military (absent various exceptions inapplicable here).

  4.2 Mr. Preston is a member of the Oregon Army National Guard.

  4.3 Mr. Preston gave notice to Cellular Plus of his military service obligations.

  4.4 Mr. Preston served honorably during his military service obligations.

  4.5 Mr. Preston timely requested return to work following completion of his military service obligations.

  4.6 Mr. Preston served less than five years with the military during his term of employment with Cellular Plus.

  4.7 Cellular Plus clearly and willfully violated 38 U.S.C. § 4312 by denying Mr. Preston reinstatement to his full-time position in October 2018, after coming off military orders.

  4.8 As an alternative theory to Mr. Preston's Fourth Cause of Action for Unlawful Discharge, Cellular Plus clearly and willfully violated 38 U.S.C. § 4312 by denying Mr. Preston reinstatement to his full-time position in December 2018 after coming off military orders.

  4.9 As a result of Cellular Plus's unlawful failure(s) to reinstate Mr. Preston, Mr. Preston suffered economic and non-economic damages in an amount to be proven at trial.

## V. THIRD CAUSE OF ACTION
### (Unlawful Retaliation/Reprisal - 38 U.S.C. § 4311(b))

  5.1 Pursuant to USERRA, 38 U.S.C. § 4311(b), an employer may not discriminate or take any adverse employment action against an employee as a consequence of said employee's exercise of any rights under USERRA.

  5.2 Cellular Plus clearly and willfully violated 38 U.S.C. § 4311 by retaliating against Mr. Preston for asserting his USERRA rights. Specifically, Cellular Plus retaliated against Mr. Preston by:

PLAINTIFF'S COMPLAINT - 13

WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100 Phone: 509.**624.5265**
Spokane, Washington 99201-0300 Fax: 509.**458.2728**

(a) Reassigning him to perform strictly mundane tasks that would not lead to the ability to earn sales commissions;

(b) Giving him repeated verbal counselings over trivial matters; and/or

(c) Creating a pretextual basis upon which to terminate Mr. Preston's employment (*e.g.*, failure to wear the proper color shirt to work and/or failing to show up for work shifts that Mr. Preston was never informed of).

5.3 As a result of Cellular Plus's unlawful retaliation, Mr. Preston suffered economic and non-economic damages in an amount to be proven at trial.

## VI. FOURTH CAUSE OF ACTION
### (Unlawful Discharge - 38 U.S.C. § 4316)

6.1 Pursuant to USERRA, 38 U.S.C. § 4316, an employee returning to work after a period of military service that was more than 30 days but less than 181 days may not be discharged without cause within 180 days after the date of reemployment.

6.2 Mr. Preston was on military orders from October 8, 2018 through December 10, 2018 (63 days).

6.3 Mr. Preston returned to work at Cellular Plus on December 22, 2018, but was immediately sent home on that date.

6.4 Cellular Plus informed Mr. Preston that his employment with Cellular Plus was terminated on or about December 31, 2018, which is less than 180 days after his date of reemployment.

6.5 As a result of Cellular Plus's unlawful termination of Mr. Preston's employment, Mr. Preston suffered economic and non-economic damages in an amount to be proven at trial.

PLAINTIFF'S COMPLAINT - 14

WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

## VII.   FIFTH CAUSE OF ACTION
### (Washington Law Against Discrimination - RCW 49.60.030 & RCW 49.60.180)

7.1   Pursuant to the Washington Law Against Discrimination ("WLAD"), RCW 49.60.030, RCW 49.60.180, an employer cannot discriminate or take an adverse action against an employee on account of that employee's military or veteran status.

7.2   Cellular Plus's conduct, as described above, constitutes a violation of the aforementioned provisions of WLAD, including RCW 49.60.030(1)("The right to be free from discrimination because of . . . military status . . .").

7.3   As a result of Cellular Plus's violation of WLAD, Mr. Preston suffered economic and non-economic damages in an amount to be proven at trial.

## VIII.   SIXTH CAUSE OF ACTION
### (Liquidated Damages – 38 U.S.C. § 4323(d))

8.1   Mr. Preston is entitled to liquidated damages under USERRA because Cellular Plus knew its conduct was prohibited under USERRA or showed reckless disregard for whether its conduct was prohibited under USERRA.

8.2   Cellular Plus's conduct was willful as defined by 38 U.S.C. § 4323(d) and 20 C.F.R. § 1002.312(c), because (a) Mr. Preston gave Cellular Plus notice that he was protected by USERRA, but Cellular Plus disregarded that notice and/or (b) Cellular Plus's Director of Human Resources, Mr. Chandler, knew about the violations of Mr. Preston's USERRA rights and allowed the discriminatory conduct to continue.

## IX.   SEVENTH CAUSE OF ACTION
### (Individual Liability of Cellular Plus Management)

9.1   Defendants Milican, Martinson, Schwartz, and Chandler are "employers" pursuant to USERRA, 38 U.S.C. § 4303(4)(A)(i) and WLAD.  Indeed, multiple courts have held that individuals who have supervisory authority or input over employees are "employers"

PLAINTIFF'S COMPLAINT - 15

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.**624.5265**
Spokane, Washington 99201-0300   Fax: 509.**458.2728**

under USERRA and the United States Department of Labor has declined to adopt a contrary definition. See, *e.g.*, *Croft v. Vill. of Newark*, 35 F. Supp. 3d 359, 368 (W.D.N.Y. 2014)(collecting cases).

9.2   As employers who personally engaged in the above-referenced unlawful conduct against Mr. Preston, Defendants Milican, Martinson, Schwartz, and Chandler are individually liable for the causes of action alleged in the First through Fifth Causes of Action alleged above.

9.3   As a result of Defendants Milican, Martinson, Schwartz, and Chandler's violations of USERRA and WLAD, Mr. Preston suffered economic and non-economic damages in an amount to be proven at trial.

## X.   EIGHTH CAUSE OF ACTION
### (Individual Liability – Aiding and Abetting Violation of WLAD)

10.1   The WLAD makes it illegal for any person to "aid, abet, encourage, or incite the commission of any unfair practice, or to attempt to obstruct or prevent any other person from complying with the" WLAD's requirements.  RCW 49.60.220.

10.2   Defendants Milican, Martinson, Schwartz, and Chandler, through their acts and omissions, aided and abetted the effort to carry out discriminatory and retaliatory treatment against Mr. Preston in violation of the WLAD.  As described above, these Defendants aided and abetted efforts to carry out adverse employment actions against Mr. Preston.

10.3   As a result of Defendants Milican's, Martinson's, Schwartz's, and Chandler's actions and omissions, Mr. Preston suffered economic and non-economic damages in an amount to be proven at trial.

## XI.   JURY DEMAND

11.1   Plaintiff hereby demands a trial by jury.

WK WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.**624.5265**
Spokane, Washington 99201-0300           Fax: 509.**458.2728**

## XII.    PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for the following relief:

1.    Compensation for all injury and damages suffered by Mr. Preston including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, adverse tax consequences of any award for economic damages pursuant to Chapter RCW 49.60 et seq., liquidated/punitive damages under both federal and Washington law for willful violations as it relates to the improper withholding of wages and benefits and general damages relating to emotional distress and mental anguish damages as provided by law.

2.    Plaintiff's reasonable attorneys' fees, experts' fees, and costs, pursuant to 38 U.S.C. § 4323, and as otherwise provided by law under RCW 49.48.030 and 49.60.030(2), as well as the *private attorney general* theory of recovery of reasonable attorney fees and costs in employment related cases.

3.    For such other and further relief as this Court deems just and equitable.

DATED this 12th day of February, 2019.

WITHERSPOON · KELLEY


By: *s/ Michael J. Kapaun*
Michael J. Kapaun, WSBA No. 36864
Matthew A. Mensik, WSBA No. 44260
Casey M. Bruner, WSBA No. 50168
*Attorneys for Plaintiff*

PLAINTIFF'S COMPLAINT - 17



422 W. Riverside Avenue, Suite 1100     Phone: 509.624.5265
Spokane, Washington 99201-0300          Fax: 509.458.2728